IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CW ONSET LLC, a limited liability company,<br><br>                Plaintiff,<br><br>v.<br><br>ALLIED CENTER FOR SPECIAL SURGERY, SAN ANTONIO, LLC, a limited liability company,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:14-CV-34 TS |

      This matter is before the Court on Plaintiff CW Onset LLC's ("CW Onset") Motion for Entry of Default Judgment, Elizabeth M. Guffy, Chapter 11 Trustee for the estate of Brown Medical Center, Inc.'s (the "Trustee" and "BMC") Motion to Intervene Pursuant to Rule 24 of the Federal Rules of Civil Procedure, and CW Onset's Motion to Strike the Trustee's Request for Stay or, in the alternative, for Leave to File a Sur-Reply.[1] After reviewing the parties' motions, the Court requested supplemental briefing as to the applicability of the *Wilton/Brillhart* abstention doctrine. The parties submitted the requested supplemental briefing and Plaintiff submitted a Notice of Assignment of Rights and Claims, Notice of Automatic Stay, and Withdrawal of Objection to Trustee's Motion to Intervene.

---

[1] Docket Nos. 9, 10, 14.

1

For the reasons discussed more fully below, the Court will grant the Trustee's Motion to Intervene, decline to hear this case under the *Wilton/Brillhart* abstention doctrine, and deny the remaining motions as moot.

I. BACKGROUND

This matter arises out of BMC's bankruptcy proceedings before the United States Bankruptcy Court for the Southern District of Texas. BMC filed for bankruptcy on October 15, 2013. On October 24, 2013, the Trustee was appointed as the chapter 11 trustee of BMC. At that time, the Trustee was also appointed as the chief restructuring officer ("CRO") for the defaulting defendant in this case, Allied Center for Special Surgery, San Antonio, LLC ("Allied"). The Trustee later filed a motion before the bankruptcy court seeking a replacement CRO for certain non-debtor entities, including Allied. A new CRO was appointed for Allied on January 7, 2014.

In March 2011, CW Onset and Allied entered into a lease agreement whereby CW Onset agreed to lease certain medical equipment to Allied. The lease required Allied to make quarterly rental payments to CW Onset in the amount of $64,560.00, plus applicable sales and property tax, for the use of the leased medical equipment. The lease also required that Allied pay a deposit in the amount of $63,855.00. In addition, the lease contained a provision that required the issuance of a letter of credit from a commercial bank in the amount of $250,000.00, to be paid to CW Onset upon the occurrence of an event of default.

BMC was a guarantor on the Allied-CW Onset lease. BMC was also involved in other capacities in the fulfillment of the lease, including making lease payments to CW Onset on behalf of Allied. According to the Trustee, BMC also paid the $63,855.00 deposit.

2

In October 2013, CW Onset invoiced Allied for property taxes related to the leased medical equipment. On October 31, 2013, CW Onset attempted to withdraw the amount owed in property taxes from a BMC bank account. The withdrawal was unsuccessful as that account had been closed as a result of BMC's bankruptcy filing.

On November 8, 2013, CW Onset sent a demand letter to Allied giving Allied five days to pay the back-due amount. The amount was not paid and, on November 22, 2013, CW Onset made a draw on the $250,000.00 letter of credit. On December 3, 2013, CW Onset received payment under the letter of credit in the amount of $250,000.00.

The banking institution that executed payment on the letter of credit subsequently sought relief from the automatic stay in the BMC bankruptcy proceeding and obtained an order from the bankruptcy court allowing it to exercise its setoff right against BMC's certificate of deposit posted as security. According to the Trustee, the bankruptcy court's order provided that "CW Onset may pay directly to [BMC] any excess proceeds it obtained from drawing on the Letter of Credit."[2]

On December 18, 2013, CW Onset sold the medical equipment that was the subject of the lease to a third-party for $125,000.00. CW Onset then applied the $250,000.00 payment and the $63,855.00 deposit to the amount it claimed was owed under the lease. On December 23, 2013, CW Onset sent a letter to the Trustee indicating that after withdrawing the amount owed under the lease, there was a total of $96,165.69 in excess proceeds. In the same letter, CW Onset offered to tender that amount to the Trustee who, at that time, was acting as the CRO of Allied.

---

[2] Docket No. 10, at 5.

On January 8, 2014, the Trustee sent a letter to CW Onset that took issue with CW Onset's calculation of the amount of excess proceeds owed. Based on the Trustee's calculation, CW Onset was required to pay $357,844.54 in excess proceeds. At that point, the Trustee threatened suit if CW Onset did not tender payment of the $357,844.54 by January 17, 2014. On January 17, 2014, CW Onset sent a check for $96,165.69 to Allied at its address in San Antonio, Texas. On the same day, the Trustee sent a letter to CW Onset rejecting the tender offer on behalf of BMC and indicating that the Trustee intended to file suit against CW Onset to recover the full amount of $357,844.54.

On January 21, 2014, CW Onset filed the instant action against Allied. CW Onset seeks a declaration that it calculated the excess proceeds correctly and that, except for payment of the excess proceeds to Allied, "it owes no further obligations under the Lease to Allied or to any related parties."[3] Allied failed to appear or defend in this matter. On March 14, 2014, CW Onset obtained a default certificate against Allied and on the same day filed the now pending Motion for Default Judgment.

On March 14, 2014, the Trustee moved to intervene and provided the Court notice of the filing of bankruptcy of the pending intervenor BMC. The Trustee also subsequently sought to stay this case based on the automatic stay applicable in the BMC bankruptcy proceeding. CW Onset opposed the Trustee's Motion to Intervene and moved to strike the Trustee's request to stay. However, CW Onset later withdrew its opposition to the Trustee's Motion to Intervene and similarly sought a stay of this case pending the outcome of the bankruptcy proceedings. In light of CW Onset's non-opposition, the Court will grant the Trustee's Motion to Intervene.

---

[3] Docket No. 2, at 10.

## II. DISCUSSION

"The [United States] Supreme Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'"[4] "Thus, unlike coercive actions, declaratory actions do not invoke the federal judiciary's 'virtually unflagging obligation' to exercise its jurisdiction."[5] The Tenth Circuit has provided the following factors the Court should consider in determining whether to exercise its discretion to hear a declaratory judgment claim:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[6]

As to the first two factors, the parties dispute whether proceeding in this action will settle the controversy or clarify the legal relations at issue. The Trustee argues that this Court does not have before it all of BMC's claims against CW Onset and, as such, is not in a position to completely resolve the parties' controversy. CW Onset contends that this is the only proper venue for suit because of a forum selection clause contained in the lease and because the bankruptcy court lacks authority to hear this case under *Stern v. Marshall*.[7]

---

[4] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

[5] *United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) (quoting *Sinclair Oil Corp. v. Amoco Prod. Co.*, 982 F.2d 437, 440 (10th Cir. 1992)).

[6] *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980–81 (10th Cir. 2012) (citation and internal quotation marks omitted).

[7] 131 S. Ct. 2594 (2011).

5

The Court finds that the first two factors favor declining jurisdiction in this case. As the Trustee argues, the determination of the proper amount of excess proceeds will not completely settle the controversy between the parties. Further, the application of the forum selection clause is best addressed in the first instance by the bankruptcy court. If the bankruptcy court or the United States District Court for the Southern District of Texas finds that the lease requires suit in this Court, procedural avenues exist to return the parties' dispute to this forum.

The holding of *Stern v. Marshall* does not change this outcome. In *Stern*, the United States Supreme Court addressed "whether a bankruptcy court judge . . . had the authority under 28 U.S.C. § 157 and Article III to enter final judgment" on a state law counterclaim.[8] The Court held that the bankruptcy court had statutory authority to enter a final judgment on a state law counterclaim, but was without constitutional authority to enter a final judgment under Article III. In its decision, the Supreme Court clarified that the question in *Stern* was a "narrow" one where "Congress, in one isolated respect, exceeded the limitation in the Bankruptcy Act."[9] The Court further acknowledged that it did "not think the removal of counterclaims such as [the plaintiff's] from core bankruptcy jurisdiction meaningfully change[d] the division of labor in the statute."[10] In keeping with this limiting language, this Court has previously interpreted the holding of *Stern* narrowly.[11] In any event, *Stern* does not limit the bankruptcy court from hearing the parties'

---

[8] *Id.* at 2595.

[9] *Id.* at 2620.

[10] *Id.*

[11] *See In re Rock Structures Excavating, Inc.*, No. 2:12-CV-856 TS, 2013 WL 1284969, at *6 (D. Utah March 27, 2013) (holding that "*Stern* and the Constitution do not preclude the

6

claims, as the bankruptcy court may properly submit proposed findings of fact and conclusions of law as to any claims for which it does not possess the constitutional authority to enter a final judgment under Article III.[12]

The third factor addresses procedural fencing. On this point, the Trustee asserts that "[t]his declaratory judgment action is a blatant attempt at circumventing the Bankruptcy Court's authority and obtaining a judgment that is binding against the bankruptcy estate."[13] CW Onset contends that the Trustee, not CW Onset, has engaged in procedural fencing because CW Onset is the "natural plaintiff" and should be entitled to its selected forum.

> Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[14]

In keeping with this aim, a district court may "dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction."[15]

---

bankruptcy court from entering final judgment in a fraudulent conveyance action" (citation and internal quotation marks omitted)).

[12] *See Stern*, 131 S.Ct. at 2620; *In re C.W. Mining Co.*, No. 2:12-CV-418 TS, 2012 WL 4882295, at *8 (D. Utah Oct. 15, 2012) (holding that even if the bankruptcy court lacks authority to enter final judgment on a claim under *Stern*, "the bankruptcy court is not divested completely of jurisdiction and may still issue proposed findings of fact and conclusions of law in the same manner as provided in 28 U.S.C. § 157(c)(1)").

[13] Docket No. 18, at 8.

[14] *Buzas Baseball, Inc. v. Bd. of Regents Univ. Sys. of Ga.*, 189 F.3d 477, 1999 WL 682883, at *2 (10th Cir. 1999) (unpublished) (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)).

[15] *Id.* at *3.

It is undisputed that CW Onset filed suit in anticipation of the Trustee's impending adversary action before the bankruptcy court. CW Onset attempts to cast this case as a simple contract dispute between itself and Allied. However, CW Onset's actions and discussions with the Trustee immediately prior to filing suit belie this characterization. Indeed, the actions CW Onset seeks to declare a breach of the lease occurred as a result of the initiation of the bankruptcy proceeding and the resultant freeze on BMC's accounts.

Furthermore, CW Onset has sought from the outset of this suit to obtain a ruling that would have preclusive effect on the bankruptcy estate while not involving the Trustee in the litigation. In its Complaint, CW Onset specifically sought a declaration that "it owes no further obligations under the Lease to Allied or to any related parties."[16] Taking all these facts together, the Court finds that this factor weighs against hearing CW Onset's declaratory judgment claim.

The fourth factor does not directly apply because this action does not involve a parallel state court proceeding. However, as discussed, the parties are litigating these same issues before a court of coordinate jurisdiction. Therefore, to the extent this factor applies, the Court finds that it cuts against an exercise of discretion.

The fifth factor asks whether there is an alternative remedy which is better or more effective. Here, the Trustee asserts that allowing the parties to litigate the excess proceeds issue in addition to the Trustee's other claims against CW Onset before the bankruptcy court is a better and more effective resolution of this dispute. The Court agrees.

---

[16] Docket No. 2, at 10.

Upon review of the foregoing factors, the Court concludes that this controversy is better addressed in the first instance by the bankruptcy court. Therefore, the Court will decline to exercise its discretion to hear CW Onset's declaratory judgment action.

## III.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the Trustee's Motion to Intervene Pursuant to Rule 24 of the Federal Rules of Civil Procedure (Docket No. 10) is GRANTED. It is further

ORDERED that CW Onset's Motion for Entry of Default Judgment and Motion to Strike the Trustee's Request for Stay or, in the alternative, for Leave to File a Sur-Reply (Docket Nos. 9, 14) are DENIED AS MOOT. It is further

ORDERED that this case is DISMISSED WITHOUT PREJUDICE, pursuant to the terms of this Order. The Clerk of Court is directed to close this case forthwith.

DATED this 2nd day of June, 2014.

BY THE COURT:

_____
TED STEWART
United States District Judge